UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        CASE NUMBER: 09-20473

                                            HONORABLE VICTORIA A. ROBERTS

v.

RAFAEL C. MURREY (D-1),
CHARLES A. DAVIS (D-2),
JONATHAN A. DAVIS (D-3),
BRANDI N. DAVIS (D-4), and
AMBER KINGSLEY (D-5),

        Defendants.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant Charles A. Davis' objections (Doc. 108) to the Magistrate Judge's Report and Recommendation (R&R) (Doc. 106).

On December 15, 2009, the Government charged five Defendants with conspiracy to distribute cocaine, and several related counts, in a five count superseding indictment. Two of these Defendants, Charles A. Davis ("Davis") and Rafael C. Murrey ("Murrey"), filed nine pretrial motions.

Davis filed motions to: (1) disclose *Brady* materials (Doc. 69); (2) sever (Doc. 70); (3) require disclosure and production of informants or, in the alternative, for an *in camera* hearing (Doc. 71); (4) obtain notice of the Government's intention to offer evidence (Doc. 72); and (5) suppress evidence seized from an illegal search (Doc. 73).

Murrey filed motions to: (1) compel discovery (Doc. 75); (2) suppress evidence

1

or, in the alternative, for a *Franks* hearing (Doc. 76); (3) preclude his in-court identification (Doc. 77); and (4) preclude admission of evidence (Doc. 78).

On May 11, 2010, the Court referred Defendants' motions to Magistrate Judge Mark A. Randon for an R&R. After a hearing and an *in camera* interview of a Government confidential source ("CS2"), the Magistrate recommends that all of Davis' motions be denied. He also recommends that all of Murrey's motions be denied, except Murrey's motion to preclude admission of certain 404(b) evidence (Doc. 78).

On September 9, 2010, Davis filed timely objections to the R&R. Murrey did not object to any of the Magistrate Judge's recommendations.

For the reasons stated, the Court **ADOPTS** the R&R in its entirety.

## II.  BACKGROUND

The Government alleges that, from September 2007 until December 2008, the Defendants purchased and distributed large quantities of cocaine. According to the Government, Brandi N. Davis and Amber Kingsley transported cocaine from Chicago, Illinois to Detroit, Michigan in cars with hidden compartments. Once in Michigan, the cocaine was given to Defendants Rafael C. Murrey, Charles A. Davis, and Jonathan A. Davis to sell.

The Government believes that the shipments of cocaine increased in frequency and quantity over the course of the conspiracy. In the early months, the shipments were approximately ten to fifteen kilograms every week or every other week. Beginning in July 2008, the shipments increased to twenty-five kilograms twice each week. In total, the Defendants allegedly transported and sold more than five hundred kilograms of cocaine during the conspiracy.

### III. STANDARD OF REVIEW

When reviewing a magistrate judge's order on a preliminary, non-dispositive matter, a district court must assess whether the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *United States v. Curtis*, 237 F.3d 598, 602-03 (6th Cir. 2001). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Hagaman v. Commissioner of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992). If two permissible views of the evidence exist, a magistrate judge's decision cannot be "clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985).

### IV. ANALYSIS

#### A. Motion to Sever (Doc. 70)

Davis seeks a separate trial from his co-defendants. He says that a joint trial will be highly prejudicial to his defense because the indictment charges varying levels of involvement for the individual Defendants. Because the case is complex, Davis believes the jury will be confused by the differences in the levels of culpability among Defendants, and will treat the Defendants as one. He says this will result in an unfair trial to him.

Joinder of co-defendants is proper if the defendants participated in the same acts or series of acts that constitute the crime. Fed. R. Crim. P. 8(b). However, even where it is proper, Rule 14 of the Federal Rules of Criminal Procedure permits defendants

relief from joinder likely to result in prejudice. The rule provides, "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

However, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States,* 506 U.S. 534, 538-39 (1993). District courts "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Generally, limiting instructions will cure the risk of prejudice created by a joint trial. *Id.*

Clearly, there exists a strong presumption favoring joint trials when criminal charges result from the same acts and will be proven by the same evidence. *United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir. 1995). This presumption is especially weighty when defendants are charged with joint participation in a common conspiracy. *United States v. Cope*, 312 F.3d 757, 779-80 (6th Cir. 2002). The defendant must overcome this presumption with a 'strong showing of prejudice.' *United States v. Moore,* 917 F.2d 215, 219 (6th Cir. 1990) (quoting *United States v. Hessling,* 845 F.2d 617, 619 (6th Cir. 1988)).

Davis says that his motion should be granted because the Defendants each had varying levels of culpability, which may confuse the jury and result in an unfair trial. In support, Davis cites to *United States v. Sampol,* 636 F.2d 621 (D.C. Cir. 1980), a case in which failure to sever was found to be so prejudicial and confusing to the jury that it

4

warranted a new trial. However, the facts in *Sampol* are distinguishable from Davis' in many important respects, and the case only serves to underscore why severance is not necessary.

In *Sampol,* Ignacio Novo Sampol was charged in an indictment with multiple co-defendants. Many of the co-defendants were charged with conspiracy to murder and murder, while Ignacio was charged with only false declarations to a grand jury and failing to report a felony. *Id.* at 629. The court found that the evidence admitted at trial-- much of which addressed only the murder related charges-- created an inference that Novo was a co-conspirator, despite the fact that he was not charged in the conspiracy.

Here, Davis is not charged with vastly different crimes than his co-defendants; he is charged as a co-conspirator. It is unclear why Davis believes that the indictment charges the Defendants with very different levels of involvement. The only counts alleged in the indictment in which Davis is not charged are counts which allege Murrey attempted to buy cocaine in furtherance of the conspiracy, and assaulted officers during a daring escape when officers tried to arrest him. The Court finds the risk of prejudice to Davis minimal and a severance unjustified.

The Magistrate is well within his discretion in finding that Davis did not carry his substantial burden to show that strong prejudice would result from a joint trial with his co-defendants; the Court adopts the Magistrate's recommendation to deny Davis' motion.

### B. Motion to Require Disclosure and Production of Informants or, in the Alternative, an *In Camera* Hearing (Doc.71)

During the hearing, the Government and Davis agreed that the Magistrate would

5

hold an *in camera* interview with CS2, a confidential Government informant, to determine whether CS2's identity should be disclosed. Davis submitted questions for the Magistrate to ask of CS2, and the Magistrate also asked followup questions. The Magistrate found that CS2 has no information regarding Davis.

Davis objects to the Magistrate's finding because he believes CS2 has exculpatory information under *Brady v. Maryland,* 373 U.S. 83 (1963).

Generally, the Government holds a privilege to withhold the identity of an informant. *Rovario v. United States,* 353 U.S. 53, 59 (1957). This privilege encourages citizens to communicate known criminal activity to law enforcement by protecting them against reprisals. *Id.* at 59. However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. Under such circumstances, the trial court may require disclosure.

To decide whether an informant's identity must be disclosed, the trial court balances the "public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. The court must consider the circumstances of the case, including the offense charged, the possible defenses, and the possible testimony of the informer. *Id.* at 62. To determine this, an *in camera* review "has long been the accepted practice in this circuit." *United States v. Sharp,* 778 F.2d 1182, 1187 (6th Cir. 1985).

The defendant bears the burden to show that the informant's identity will assist in his defense. *United States v. Dexta,* 136 Fed. Appx. 895, 904 (6th Cir. 2005) (citing *United States v. Moore,* 954 F.2d 379, 381 (6th Cir. 1992)). Disclosure is warranted only

when the defendant shows that disclosure is essential to a fair trial. *Dexta,* 136 Fed. Appx. at 904. "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." Sharp, 778 F.2d at 1187.

Davis believes that CS2 has exculpatory information that is essential to his defense. However, Davis does not hint to what this exculpatory information might be, or why he believes CS2 has it. During the Magistrate's hearing, Davis suggested that CS2 has information showing that a particular transaction between CS2 and a co-defendant was not part of the conspiracy. Thus, CS2's identity would help prove the alleged conspiracy was not as broad as the Government claims. Additionally, Davis suggested CS2 has information showing Davis was not involved in the conspiracy at all. Davis says this is exculpatory information, and that *Brady* requires its disclosure.

The argument advanced by Davis is similar to the argument of the defendant in *United States v. Dexta.* In *Dexta*, the defendant was indicted with a co-defendant for conspiracy to distribute, and filed a motion for disclosure of the identities of two confidential government informants on the grounds that the informants had exculpatory information relevant and essential to a fair trial, even though the informants provided no information that implicated the defendant. *Id.* at 898. After an *in camera* hearing, the Magistrate issued an R&R recommending that defendant's motion be denied because the defendant did not meet his burden of showing that the identity of the informant would be of substantial assistance to his defense.

The defendant objected to the R&R, based in part on the contention that this burden violated *Brady v. Maryland,* because the government bears the burden to disclose exculpatory information. *Id.* at 899. Despite the defendant's objections, the

7

District Court adopted the R&R.  The Sixth Circuit affirmed, noting the informants supplied no information about the defendant, and the defendant based his claim that the informant had exculpatory information on speculation and conjecture.  *Id.* at 905.

Here, the Magistrate performed an *in camera hearing*, and concluded that CS2 has no information helpful to Davis' defense, "or any other information essential to a fair determination of the case."  This includes exculpatory information.  The Court finds Davis' claim that CS2 has exculpatory information speculative and based on conjecture; the Magistrate's denial of Davis' motion is proper.

**C. Motion to Suppress Evidence Seized from an Illegal Search (Doc. 73)**

Davis objects to the denial of his motion to suppress evidence seized from a search of his home, claiming the affidavit failed to establish a nexus between the alleged criminal activity and his residence; thus, there was no probable cause to search the residence.

Probable cause exists where the totality of the circumstances indicate "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).  In order for a search to be justified, "the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004).  In other words, a nexus must exist between the place searched and the evidence sought. *Id.*  However, a finding of a nexus does not require the affidavit to allege that the criminal activity took place at the location to be searched. *United States v. Khami,* 362 Fed. Appx. 501, 504 (6th Cir. 2010) (citing *United States v. Jones,* 159 F.3d 969, 974-75 (6th Cir. 1998)).

In this case, the affiant, Special Agent Fountain ("SA Fountain") of the Drug

8

Enforcement Administration, swore facts that indicated Davis was involved in drug trafficking.

Through a confidential source, CS1, SA Fountain received information that two persons referred to as "Mack" and "Baldy" were cocaine traffickers. During at least one recorded phone call between CS1 and Baldy, the two specifically discuss 65 kilograms of cocaine provided by CS1 to Baldy. Baldy says that he still has one kilogram to sell, and so does Mack. (Aff. ¶ 7).

On December 2, 2008, in a phone call between CS1 and Justin Turner, who allegedly acted as a middleman in these transactions, Turner and CS1 discuss a cocaine delivery. Turner negotiates a delivery of 80 kilograms of cocaine for Baldy and Mack. (Aff. ¶ 8). Later that same day, CS1 calls Baldy to confirm the time and place of delivery. They agree it will be delivered to the same place as previous shipments. When Baldy showed up to take the delivery that night, agents were there to arrest him, but Baldy made a daring escape.

Agents later determined that Mack was Defendant Davis. According to CS1, Davis began buying cocaine directly from CS1 in October 2008. CS1 said he/she provided Baldy and Davis with approximately 300 kilograms of cocaine from October 2008 to November 2008. Considered together, this information established probable cause to believe that Defendant Davis was trafficking drugs.

Additionally, SA Fountain swore on the basis of his training and experience that drug traffickers often keep records (including address books, telephone numbers, drug quantity information, and debt records), which they conceal in readily accessible places (for example, their homes, garages, offices, and cars). Based on this, the Magistrate

9

found probable cause to search Davis' residence for evidence of drug trafficking. The Court agrees.

Here, the Court finds *United States v. Gunter,* 551 F.3d 472 (6th Cir. 2009) instructive. In *Gunter,* the defendant appealed his conviction for conspiracy to distribute claiming the affidavit was insufficient to establish probable cause to search his residence because there was no nexus between his alleged criminal activity and his residence. The Sixth Circuit stated:

> The affidavit contains evidence that Gunter was engaged in repeated purchases of cocaine in the one to four kilogram range. Because the quantity of drugs and repeated nature of the transactions make it reasonable to conclude that Gunter was engaged in ongoing drug trafficking, it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence.

*Id.* at 481.

This reasoning applies with equal force to Davis; because there is probable cause to believe Davis was involved in drug trafficking, there is probable cause to believe that evidence of drug trafficking might be found at his residence.

Davis' objection is without merit.

## V.     CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R. Accordingly, the Court **DENIES** Davis' motions in their entirety, and **DENIES** Murrey's (1) motion to compel discovery (Doc. 75); (2) motion to preclude his in-court identification (Doc. 77); and (3) motion to suppress evidence or, in the alternative, for a *Franks* hearing (Doc. 76).

The Court **GRANTS** Murrey's motion to preclude admission of certain 404(b) evidence (Doc. 78).

**IT IS ORDERED.**

                                                  **S/Victoria A. Roberts**
                                                  **Victoria A. Roberts**
                                                  **United States District Judge**

**Dated: November 10, 2010**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 10, 2010.**
>
> **s/Carol A. Pinegar**
> **Deputy Clerk**

11